IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS D. RODRIGUEZ, | ) | CASE NO. 1:19cv746 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Luis D. Rodriguez ("Rodriguez") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

As set forth more fully below, the ALJ failed to consider Rodriguez' diagnosis of Meniere's disease[1] and the VE testimony did not amount to substantial evidence that would support the ALJ's finding that Rodriguez could perform jobs that exist in significant numbers in the national economy. As a result, the undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings consistent with this opinion.

**I. Procedural History**

On September 26, 2013, Rodriguez filed an application for DIB, alleging a disability

---

[1] See note on p. 3.

onset date of October 17, 2012. Tr. 151. He alleged disability based on the following: high blood pressure, dizziness, vomiting, and breathing problems. Tr. 353. His claim was denied, a hearing was held before an Administrative Law Judge ("ALJ"), and the ALJ issued an unfavorable decision on September 24, 2015. Tr. 148, 151. Rodriguez appealed to the Appeals Council, which accepted review and remanded the case for consideration by a different ALJ for further proceedings. Tr. 169.

A second administrative hearing was held on February 1, 2017. Tr. 65. Post-hearing, the ALJ submitted interrogatories to the vocational expert (VE) and the VE responded. Tr. 18. At the request of counsel, a supplemental hearing was held on September 13, 2017. Tr. 18, 43. In her November 27, 2017, decision (Tr. 18-36), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Rodriguez can perform, i.e., he is not disabled. Tr. 35. Rodriguez requested review of the ALJ's decision by the Appeals Council (Tr. 318) and, on February 22, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

## II. Evidence

### A. Personal and Vocational Evidence

Rodriguez was born in 1965 and was 47 years old on his alleged disability onset date. Tr. 34. He last worked in a foundry for 13 years doing chipping and grinding and operating a blasting machine. Tr. 931-932.

### B. Relevant Medical Evidence

On June 10, 2013, Rodriguez visited the Free Clinic complaining of dizziness described as "room spinning" and imbalance, vertigo for 3 years, and constant ringing in his right ear. Tr.

502. He had had a full work-up previously and head scans had been negative. Tr. 502. He was referred to an ear, nose and throat doctor (ENT). Tr. 502.

On June 24, 2013, Rodriguez saw ENT Dr. Moroni, M.D., complaining of tinnitus and occasional dizziness for years. Tr. 463. His dizzy spells seemed to be getting worse and he was taking over-the-counter sea sickness medication. Tr. 463, 554. Dr. Moroni referred him for testing. Tr. 459.

On June 28, 2013, Rodriguez had an ENG study performed by Dr. Mahajan, M.D., to look for significant vestibular dysfunction. Tr. 459. Dr. Mahajan's conclusion was a "mildly abnormal ENG study due to the right-beating nystagmus seen along with nystagmus seen during the Dix-Hallpike maneuver testing. This is suggestive of vestibular dysfunction which seems peripheral in character. Clinical correlation is requested." Tr. 459.

On August 5, 2013, Rodriguez visited the Free Clinic and reported that he had seen an ENT for his vertigo, he was given medication that was working well for him, and he was feeling better. Tr. 500.

On October 29, 2013, Rodriguez returned to Dr. Moroni reporting that his balance was much better although he was "still having high frequency [sic]." Tr. 465.

On November 1, 2013, Rodriguez visited the Free Clinic and reported slight dizziness that had improved. Tr. 499. He was taking valium for his vertigo. Tr. 499.

On January 1, 2014, Dr. Moroni completed a form report listing Rodriguez's history of complaints; reported his physical findings as an abnormal ENG study; and stated her impressions as follows: diagnosis of tinnitus, right hearing loss, and Meniere's Disease.[2] Tr. 476.

---

[2] Meniere's disease is a disorder of the inner ear that can lead to dizzy spells (vertigo), tinnitus, and hearing loss. Tinnitus is the perception of a ringing, buzzing, roaring, whistling or hissing sound in the ear. See https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 (last visited 8/10/2020).

On May 16, 2014, Rodriguez had a follow up visit at the Free Clinic and complained of severe dizziness and left shoulder pain. Tr. 496. Upon exam, he was unable to tandem walk without losing his balance, he had a slow gait with decreased mobility on his left side, and eye movements caused dizziness. Tr. 496. He had a positive Romberg test and was assessed with a neurological impairment. Tr. 496. His medications were adjusted and he was referred to neurology. Tr. 496.

On May 30, 2014, Rodriguez saw neurologist Dr. Mahajan for an evaluation of his dizziness. Tr. 532. Rodriguez reported that his dizziness was non-positional and happened with eye movement and he stated that he had had one fainting spell. Tr. 532. He had had these symptoms for 3 years and he was not taking medication. Tr. 532. Dr. Mahajan stated that Rodriguez had seen Dr. Moroni in 2013 and that ENG study showed vestibular dysfunction which seemed peripheral. Tr. 532. His vitamin D level was low. Tr. 532. Upon exam, his gait was normal and "he maintained his Romberg position very well." Tr. 534. There was "a question of mild weakness in the right lower extremity as compared to the left side" although he had full muscle strength. Tr. 534. He was diagnosed with abnormality of gait, dizziness or giddiness, and depressive disorder not elsewhere classified. Tr. 534. Dr. Mahajan ordered a brain MRI and physical therapy. Tr. 534.

On July 29, 2014, Rodriguez visited Lorain County Health & Dentistry to establish care for his hypertension and knee pain. Tr. 619. He also reported he had noise in his right ear and that he used a cane for balance. Tr. 619.

On September 10, 2014, Rodriguez returned to Dr. Mahajan for a follow up. Tr. 528. His dizziness was better with valium but "still there" and he had had a fainting spell the month prior. Tr. 528. He hadn't gotten his brain MRI or lab work or taken his other medications. Tr.

4

528.  Upon exam, he had no focal weakness, strength was well maintained, his balance was good, and he ambulated well.  Tr. 530.

On November 12, 2014, Rodriguez saw Dr. Mahajan for a follow up visit.  Tr. 525.  His chief complaint was dizziness.  Tr. 525.  He reported having fallen two weeks prior and hitting his head; he was hospitalized as a result and, while there, it was discovered that the carotid arteries in his neck were blocked 35%.  Tr. 525, 602.  He was walking with a cane.  Tr. 525.  He had gotten his lab work and MRI, which were normal, but he had not started physical therapy.  Tr. 525.  Upon exam, he had no focal weakness, his balance was good, and he ambulated well.  Tr. 527.  Dr. Mahajan's impressions were gait ataxia and falls; needs to continue to do his exercises, "he is using the cane," right conductive hearing loss with tinnitus, dizziness with vestibular dysfunction, and vitamin D deficiency.  Tr. 527.  He indicated that would get Rodriguez' records from his recent hospital visit.  Tr. 525.

On November 12, 2014, Rodriguez saw Dr. Mahajan for a follow up.  Tr. 546.  Dr. Mahajan commented that he would get the full records from Rodriguez' hospital visit and emphasized that he continue his vitamin D.  Tr. 546.

On November 14, 2014, Rodriguez visited Lorain County Health & Dentistry for a follow up for the blocked carotid arteries in his neck, for which he received a referral to a vascular surgeon.  Tr. 602.  He reported being unsteady on his feet and needing a cane so he didn't fall down.  Tr. 603.

On January 14, 2015, Rodriguez saw Dr. Mahajan for a follow up.  Tr. 542.  He reported doing "okay" since his last visit: his dizziness was the same, his walking and balance had been "all right," and he had had no falls.  Tr. 542.  He was walking with a cane.  Tr. 542.  The records from his hospital visit showed 16%-49% stenosis of the carotid arteries in his neck.  Tr. 542.

5

Upon exam, he had clear vision, no focal weakness, well maintained strength, good balance, and he ambulated well.  Tr. Tr. 544.  He was advised to do his exercises regularly.  Tr. 542.

On January 14, 2015, Rodriguez saw Dr. Mahajan for a follow up visit and reported doing better since his last visit.  Tr. 542.  Dr. Mahajan's impression included the following: "[t]he patient has had gait ataxia and falls.  He is doing better."  Tr. 544.  He was advised to do his exercises regularly.  Tr. 542.

On March 30, 2015, Rodriguez visited pain management for a left knee injection and reported that he had stopped taking his Mobic, vitamin D, Prilosec, and Zanaflex one week prior because he had been feeling dizzy and nearly fainted and had had problems in the past with medication making him feel dizzy and weak.  Tr. 746.

On July 29, 2015, Rodriguez was seen at pain management and was not regarded as a fall risk.  Tr. 775.  He had full strength and his gait and sensation were normal.  Tr. 775.

On January 16, 2015, Rodriguez visited Lorain County Health & Dentistry for medication refills for musculoskeletal pain in his thumb.  Tr. 595.  He requested a new prescription for a cane.  Tr. 595.

On March 11, 2015, Rodriguez visited pain management for an evaluation of his neck, shoulder, knee, and right thumb pain.  Tr. 734.  Upon exam, he had full strength, sensation, and he ambulated with a quad cane.  Tr. 736, 737.  It was noted that he had a history of Meniere's Disease and he was diagnosed with osteoarthritis.  Tr. 738, 739.

On April 3, 2015, Rodriguez visited Lorain County Health & Dentistry for worsening musculoskeletal pain and worsening dizziness.  Tr. 583-584.  He described his dizziness as light-headedness and becoming imbalanced when bending and standing.  Tr. 584.  It was aggravated by a medication change; since he started taking medication prescribed by pain management his

6

vertigo has gotten worse. Tr. 584. His medication lists included using a cane daily and using a cane as needed. Tr. 586.

On August 4, 2015, Rodriguez followed up with Dr. Mahajan complaining of dizziness. Tr. 666. He reported doing "the same," he continued to be off balance, he had ringing in his ears, daily headaches and sensitivity to light, and "he has to be careful or he will fall." Tr. 666. He was using a cane. Tr. 666. His exam findings were normal. Tr. 668. Dr. Mahajan's impression included, "patient has had gait ataxia, he is not falling anymore, he has not fainted." Tr. 668. He remarked that Rodriguez' vitamin D level had been low again in March and that he was taking supplements. Tr. 668. He emphasized that Rodriguez should do his exercises regularly and that he would be starting physical therapy soon, which should help. Tr. 668. He commented that Rodriguez was not seeing Dr. Moroni anymore due to a change in insurance and that he needed to see someone for his right side hearing loss. Tr. 668.

On October 28, 2015, Rodriguez visited pain management and had a normal gait. Tr. 784.

On December 2, 2015, Rodriguez saw Dr. Mahajan for a follow up. Tr. 662. He was doing about this same since his prior visit and his dizziness fluctuated. Tr. 662. He was using a cane. Tr. 662. He was not taking the valium that Dr. Moroni had prescribed for his dizziness and his vitamin D level was significantly low. Tr. 662. Dr. Mahajan increased his vitamin D supplement and emphasized that he do his exercises. Tr. 662. His exam findings were normal. Tr. 664. Dr. Mahajan's impression included: "The patient has gait ataxia. He has not fallen" and "He has had fainting spells in the past, which are controlled." Tr. 665.

On January 27, 2016, Rodriguez visited pain management and his gait was normal. Tr. 794.

7

On May 27, 2016, Rodriguez returned to Dr. Mahajan for a follow up. Tr. 657. He reported that his gait was still "off." Tr. 657. Since his last visit he had not had any falls and he had not fainted, but he had gotten light headed. Tr. 657. "He is using the cane now." Tr. 657. Upon exam, he had no focal weakness, full strength, and had gait ataxia and used a cane. Tr. 657.

On July 28, 2016, Rodriguez saw rheumatologist Dr. Tsai, M.D., for an evaluation of his right hand pain. Tr. 671. He reported always being dizzy and using a cane for the last three years. Tr. 672. Upon exam, he had a normal gait without an assistive device and normal toe and heel walk. Tr. 675. Dr. Tsai diagnosed osteoarthritis, vitamin D deficiency, and anemia, among other musculoskeletal diagnoses, and recommended wrist splints, regular exercises, and that he consult an ENT for his dizziness and hearing loss. Tr. 675-676.

On January 30, 2017, Rodriguez followed up with Dr. Tsai. Tr. 817. Since his last visit he had had no falls and no adverse effects from his medications. Tr. 817. Upon exam, he had a normal gait without an assistive device and normal toe and heel walk. Tr. 819.

**C. Medical Opinion Evidence**

**1. Treating Physician**

On December 10, 2013, Dr. Moroni completed a Social Security Questionnaire. Tr. 455-457. She stated that she first saw Rodriguez in June 2013 and last saw him in October 2013. Tr. 456. She listed his diagnoses as Meniere's Disease, right sensorineural hearing loss, and tinnitus. Tr. 456. His symptoms started 3 years prior and his attacks were now more frequent. Tr. 456. When asked what limitations Rodriguez' impairment caused on his ability to work, Dr. Moroni stated that when Rodriguez is dizzy he should not drive or operate any machines; otherwise, he is able to live a normal life, "walking, bending, lift, grasp, relate to others." Tr. 457.

8

### 2. State Agency Reviewing Physicians

On December 20, 2013, state agency reviewing physician Dr. Manos, M.D., reviewed Rodriguez' record and opined that he could perform work at all exertional levels, he had some postural limitations, and he should avoid even moderate exposure to noise, should be limited to occasional heavy machinery type noisy environments and hearing protection must be worn, and he should avoid all hazards where acute binaural hearing is required for safety. Tr. 128. On May 7, 2014, state agency reviewing physician Dr. Delphia, M.D., concurred with Dr. Manos' opinion. Tr. 142-143.

### D. Testimonial Evidence

#### 1. Rodriguez's Testimony[3]

Rodriguez was represented by counsel and testified at his 2015 and February 2017 administrative hearings. Tr. 65, 922. Relevant to the issues Rodriguez challenges in this case, he testified that when he talks on the phone he holds the phone to his left ear, and, while he can hear, he can't hear clearly. Tr. 75-76. He has tinnitus and has ringing in his ears 24 hours a day. Tr. 76, 932. He experiences periods of dizziness. Tr. 78. In 2015 he was taking valium for his dizziness and in 2017 he was taking diazepam. Tr. 78, 938. He also has problems with balance. Tr. 933. At his hearing in 2015, Rodriguez stated that his balance had gotten a little bit better because he no longer got nauseas, but his dizziness has remained. Tr. 933. His dizziness occurred with certain movements, such as when he is looking at one thing and then shifts his focus to looks at another thing. Tr. 933. If he maintains his line of sight without moving, the dizziness stops. Tr. 933.

Rodriguez stated that he used a cane to support himself because of his dizziness. Tr. 934.

---

[3] Rodriguez' testimony summarized herein was taken from his hearing in 2015 and his hearing in February 2017. Rodriguez was present for the supplemental hearing in September 2017 but did not testify.

9

He takes the cane with him when he goes outside if he is going a great distance. Tr. 934.

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified. The VE's testimony at the February 2017 hearing spanned 37 pages. Tr. 80-117. Afterwards, the ALJ submitted 13 pages of interrogatories, which the VE answered. Tr. 424-437. The VE's testimony at a supplemental hearing in September 2017 spanned 15 pages. Tr. 47-62. The bulk of the discussion at both hearings related to the noise restrictions that the state agency reviewing physicians had assessed, and which was the subject of considerable debate. The ALJ assessed Rodriguez with two different RFCs in her decision based on different time periods. The ALJ stated that, relying on VE testimony at the hearing in response to the first RFC, Rodriguez could perform the following jobs that exist in significant numbers in the national economy: mail clerk, food service worker, and wire worker for the time period between October 17, 2012 and December 31, 2015.[4] Tr. 26, 32. Regarding the second RFC, the ALJ stated that, based on the VE's answers to the interrogatories, Rodriguez could perform the following jobs that exist in significant numbers in the national economy: laundry worker, hand packager, and kitchen helper as of January 1, 2016. Tr. 33, 35.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

---

[4] It does not appear that the ALJ presented a hypothetical to the VE at the hearing with the precise limitations that were contained in her first RFC.

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[5] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the

---

[5] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In her November 27, 2017, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017. Tr. 21

2. The claimant has not engaged in substantial gainful activity since October 17, 2012, the alleged onset date. Tr. 21.

3. The claimant has the following severe impairments: mild vestibular dysfunction; right-sided hearing loss; tinnitus; As of August 27, 2014, degenerative disc disease of the cervical spine characterized as mild disc space narrowing at C6-C7 with facet arthrosis and spurring; As of September 14, 2014, osteoarthritis in the left knee characterized as mild; As of January 2016, partial thickness tear of anterior supraspinatus tendon of the right shoulder; osteoarthritis of the left knee. Tr. 21.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24.

5. Between October 17, 2012, and December 31, 2015, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He could occasionally stoop, kneel, crouch, and crawl. The claimant has limited hearing on the right and could be exposed to moderate noise, but hearing protection must have been worn. Tr. 26.

6. The claimant is unable to perform any past relevant work. Tr. 31.

7. The claimant was born in 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 32.

8. The claimant has a limited education and is able to communicate in English. Tr. 32.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

> supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills. Tr. 32.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform prior to January 1, 2016. Tr. 32.

11. As of January 1, 2016, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can frequently stoop, and occasionally kneel, crouch, and crawl. He can be exposed to loud noise as at level four, but hearing protection must be worn in those circumstances. He should avoid working around dangerous moving machinery and unprotected heights. Tr. 33.

\*     \*     \*

16. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that claimant can perform. Tr. 35.

17. The claimant has not been under a disability, as defined in the Social Security Act, from October 17, 2012, through the date of this decision. Tr. 35.

### V. Law and Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor

resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Rodriguez argues that the ALJ erred when she failed to provide a valid rationale for rejecting the state agency reviewers' opinions regarding noise restrictions, for providing different noise limitations in her two RFCs covering different time periods with no relevant explanation, and when she found that Rodriguez did not need to use a cane. Doc. 17, pp. 15-21. Defendant submits that the ALJ did not err, and, even if she did, a "a careful review of the record shows that substantial evidence support[s]" a finding that Rodriguez could perform work identified by the VE and that, accordingly, any error by the ALJ was harmless. Doc. 20, p. 1. The undersigned has carefully reviewed the record and concludes that the ALJ's errors are so numerous that it is not possible to determine whether the errors were harmless.

### A. The ALJ failed to properly consider Rodriguez' diagnosis of Meniere's disease, which also impacted the ALJ's decision regarding cane use

Rodriguez argues that the ALJ erred when he discounted the state agency reviewers' opinions. Doc. 17, p. 16. He contends that the ALJ's determination that he was not diagnosed with Meniere's disease is not supported by substantial evidence. Doc. 17, p. 16. The undersigned agrees.

When assigning partial weight to the state agency reviewers' opinions, the ALJ explained,

> ….[B]oth reviewers reviewed Dr. Moroni's opinion in 2F and the June 18, 2013, ENG caloric test. The latter test confirmed a "mildly abnormal ENG study" which was "*suggestive* of vestibular dysfunction *peripheral in character*" —it did not, however, confirm or diagnose Meniere's disease.

Tr. 30. Thus, the ALJ discounted the state agency reviewers' opinions because both opinions cited Dr. Moroni's diagnosis of Meniere's disease in support of their opinions. See, e.g., Tr. 128.

14

However, the ALJ did not explain why she discounted Dr. Moroni's diagnosis of Meniere's disease. Accordingly, her rejection of the state agency reviewers' opinions on that basis are faulty. Moreover, the ALJ failed to recognize in this portion of her decision that the ENG study, after stating the results, concluded, "Clinical correlation is requested." Tr. 459. Rodriguez posits that Dr. Moroni's subsequent diagnosis of Meniere's disease was the result of such "clinical correlation." Doc. 17, p. 16. It is true that Dr. Moroni, Rodriguez' treating ENT physician, diagnosed Rodriguez with Meniere's disease subsequent to the ENG study that she had ordered. Tr. 459. The ALJ did not mention Dr. Moroni's diagnosis of Meniere's disease, despite addressing other aspects of Dr. Moroni's records and the opinion she submitted. The ALJ did note that the record indicated that Rodriguez' neurologist had not diagnosed him with Meniere's disease (Tr. 26), but the fact that Rodriguez' neurologist had not diagnosed him with Meniere's disease does not, alone, invalidate Dr. Moroni's diagnosis. And, because the ALJ discredited the state agency reviewers' opinions because they relied on Dr. Moroni's diagnosis of Meniere's disease, the ALJ's consideration of the state agency reviewing opinions is not supported by substantial evidence.

Rodriguez also challenges the ALJ's RFC finding that omitted a restriction that Rodriguez required a cane to ambulate. Doc. 17, p. 18. Rodriguez testified that he used a cane due to his dizziness. The ALJ found that Rodriguez did not require a cane because, when he was given a prescription for a new cane, in February 2015, the evidence around that time did not indicate the need for a cane. See Tr. 29 (observing, "there was no corresponding examination by a physician around that time to confirm the findings on physical examination for the medical necessity of the same.").[6] Nevertheless, the ALJ's reconsideration of Dr. Moroni's diagnosis of

---

[6] The ALJ also commented that Rodriguez exhibited a normal gait without an assistive device after January 1, 2016. Tr. 34. However, Dr. Mahajan found he had gait ataxia and used a cane in May 2016. Tr. 657, 659.

15

Meniere's disease may impact this finding.  As Rodriguez notes, symptoms of Meniere's disease often fluctuate, Doc. 17, p. 6,[7] which may explain why Rodriguez was sometimes found to have a normal gait and sometimes not found to have a normal gait.

In sum, the ALJ erred when she failed to consider that Dr. Moroni had diagnosed Rodriguez with Meniere's disease, which impacted her consideration of the state agency reviewers' opinions.  Upon remand, the ALJ will also have an opportunity to revisit Rodriguez' need for a cane.

### B. The noise restrictions in the ALJ's two RFCs and the VE's testimony regarding the same are not supported by substantial evidence

As noted above, the ALJ provided two different RFCs because Rodriguez injured his shoulder in January 1, 2016.  The ALJ explained,

> I have chosen to use two RFCs in the decision because there is a clear demarcation in the chronology of events that supports more restrictions later in time.  The claimant was assaulted in December 2015 and suffered an injury to the left shoulder….Therefore, the first RFC reflects the time period before the assault, and the second RFC reflects the time period after the assault.

Tr. 27.  However, the ALJ's two RFCs also contained different noise restrictions.  Rodriguez contends that the ALJ failed to provide any rationale for establishing these two different noise restrictions.  Doc. 17, p. 15.  The undersigned agrees.

The ALJ's first RFC stated that Rodriguez had limited hearing on the right and can be exposed to moderate noise but must wear hearing protection.  Tr. 26.  The VE had testified that "moderate" noise is considered level 3 noise according to the Department of Labor.  Tr. 83-84. The second RFC stated that Rodriguez can be exposed to loud noise at a level 4 but he must wear hearing protection.  Tr. 33.  Thus, the second RFC stating that Rodriguez can be exposed to loud,

---

[7] See also https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 (last visited 8/10/2020).

level 4 noise is less restrictive than the first RFC. The ALJ offered no reason for establishing those two different noise limitations. Moreover, the ALJ did not provide an explanation for rejecting the state agency reviewers' opinions that Rodriguez avoid exposure to even "moderate noise."[8]

Defendant asserts that, even if there were errors, such errors are harmless. Doc. 20, p. 8. Generally, a court reviews an ALJ's decision for harmless error. Thus, if the ALJ committed an error, a court will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of a substantial right as a result of the error. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009); *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Defendant submits that, between the interrogatories and the supplemental hearing testimony, the VE was given an RFC containing the same restrictions as the RFC assessed by the state agency reviewing physicians and determined that there were jobs such a person could perform. Doc. 20, p. 8 (citing Tr. 435, interrogatory number 32). Therefore, Defendant asserts, even if the ALJ had adopted an RFC containing the state agency reviewers' opinions, the outcome would not have been different, and any error is harmless.

The undersigned disagrees. Interrogatory 32, referenced by Defendant, included an RFC with a limitation that the hypothetical individual could frequently climb ramps and stairs,

---

[8] The ALJ criticized the state agency reviewers' "verbiage used to describe the claimant's hearing limitation." Tr. 30. But the state agency reviewers found two different noise limitations, and the verbiage that the ALJ found problematic was the "occasional exposure to heavy machinery noisy-type environments restriction," not the restriction to avoid exposure to moderate noise. Tr. 30, 86-88. Additionally, although the VE stated that the verbiage used by the state agency reviewers was not entirely consistent with the DOT (Tr. 86-87), as the ALJ noted (Tr. 30), the VE also testified later that that verbiage was consistent and amounted to a "very clear, vocational relevant hypothetical." (Tr. 111-112).

whereas the state agency reviewing physicians' RFC included a limitation that the hypothetical individual could only occasionally climb ramps and stairs (Tr. 127). Thus, it was not the same RFC that the ALJ proposed to the VE and to which the VE responded when identifying jobs that the hypothetical individual could perform. The undersigned declines to scour the record for VE testimony and answers to interrogatories in an attempt to piece together a possible list of jobs that Rodriguez could perform using a patchwork of limitations.[9] Simply put, it cannot be said that substantial evidence in the form of VE testimony supports a finding that there are jobs in significant numbers that Rodriguez could perform had the ALJ adopted the state agency reviewers' opinions. Accordingly, the ALJ's errors are not harmless.

In sum, despite robust discussion of various noise limitations at both hearings and numerous hypotheticals, the issues became muddied, not clarified. On remand, the ALJ will have an opportunity to sort out those issues.

---

[9] The undersigned notes that there were moments during the hearing when the VE and ALJ had difficulty hearing one another, and at least one of the VE's answers was based upon his misunderstanding of the hypothetical. See, e.g., 82, 90, 91-92, 102-103. Those events do not instill confidence in the hearing testimony.

## VI. Conclusion

For the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings consistent with this opinion.[10]

Dated: August 12, 2020

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[10] This opinion should not be construed as a recommendation that, on remand, Rodriguez be found disabled.